IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELENA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 0008 |
| | ) | |
| US BANK NATIONAL ASSOCIATION, as | ) | |
| Trustee for Credit Suisse First Boston 2004-AA1; | ) | |
| AHL ACQUISITION, LLC, as Successor in | ) | |
| Interest by Way of Merger to Aames Funding | ) | |
| Corporation d/b/a Aames Home Loan; WELLS | ) | |
| FARGO HOME MORTGAGE, INC., d/b/a | ) | |
| America's Servicing Company; REAL TIME | ) | |
| RESOLUTIONS, INC.; WILLIAM J. PARKER; | ) | |
| CODILIS & ASSOCIATES, P.C.; UNKNOWN | ) | |
| SHELL COMPANY; UNKNOWN TRUSTEE | ) | |
| FOR UNKNOWN TRUST; UNKNOWN | ) | |
| BENEFICIARY OF UNKNOWN TRUST; | ) | |
| UNKNOWN HOLDER OF THE NOTE; | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

For the reasons set forth below, defendant Real Time Resolution, Inc.'s "Motion to Enforce Settlement" (Dkt. No. 62) is taken under advisement. The court will address scheduling of an evidentiary hearing at the March 15, 2011 status hearing. The parties are encouraged to further discuss settlement of Jones's remaining claim against RTR.

PROCEDURAL HISTORY

In this lawsuit, *pro se* plaintiff Selena Jones ("Jones") has alleged that defendant Real Time Resolution, Inc. ("RTR") is liable to Jones for violations of the Real Estate Settlement

1

Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") ("Third Cause of Action"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") ("Eighth Cause of Action"), and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") ("Ninth Cause of Action"), based on RTR's servicing of a consumer mortgage refinance transaction, Loan No. 0001686708, in the amount of $38,800.00 ("Second Loan"). (Dkt. No. 73 ("2d Am. Compl"). ¶¶ 12, 33, 119-125; 161-174.) In a separate court order issued today, the court has dismissed Jones's RESPA and FCRA claims against RTR, leaving only the FDCPA claim at issue.

On July 2, 2010, RTR filed a "Motion to Enforce Settlement" (Dkt. No. 62), asking the court "to enforce the settlement agreement that RTR formed with plaintiff Selena Jones on June 18, 2010 [sic]." (*Id.*)

BACKGROUND

On June 15, 2010, an attorney representing RTR named Bryant Lamer ("Lamer") communicated with Jones over the telephone on three separate occasions, discussing with Jones the possibility of settling Jones's claims against RTR. According to Lamer's sworn affidavit, after some back and forth discussion, Jones stated "that she would accept the settlement and release RTR from all claims if a cash offer was added to demand of a release from personal liability on the Second Loan." (Dkt. No. 60 ("RTR's Mem."), Ex. I ("Lamer Aff.") ¶ 7.) Lamer attests that he accepted Jones's counteroffer, thereby agreeing that (1) Jones would release RTR from all claims possessed by Jones; (2) Jones would receive $1,000 cash; and (3) Jones would receive from RTR "a full release from personal liability on the Second Loan" (hereinafter, the "Material Terms"). (*Id.* ¶ 8; *see also* RTR's, Mem, Ex. A ("6/15/10 Lamer Email").)

In a declaration signed under penalty of perjury, Jones contends that she "did not state that she would accept [the settlement]," but instead "stated I needed three days to review it." (Dkt. No. 97 ("Jones Decl.") ¶ 5.) Jones also contends that she demanded "a full Release of Lien / Satisfaction of Mortgage which I could record in the property records," which she claims was never offered by RTR. (*Id.* ¶ 4.)

After the relevant June 15, 2010 phone call, Lamer sent an email to Jones memorializing the Material Terms of their agreement and asking Jones to "[p]lease confirm today by email response that you have agreed to this settlement and identify to whom the check should be made payable." (6/15/10 Lamer Email.) Lamer also stated:

> As we discussed, I am drafting a short, but more comprehensive settlement agreement and the joint stipulation of dismissal with prejudice for your signature. Once signed, you will scan and send both the settlement agreement and joint stipulation of dismissal with prejudice to my attention. I will then sign and file the joint stipulation of dismissal with prejudice and send a copy of the same and the completely executed settlement agreement for your records.

(*Id.*) In response to Lamer's email, Jones did not explicitly confirm or deny that an agreement had been reached regarding the Material Terms, nor did she specify to whom RTR's check should be made payable. Instead, Jones responded, "Thanks for such a prompt response. You may draft the settlement agreement & motion and forward it to me for my review and or approval." (RTR's Mem., Ex. B ("6/15/10 Jones Email").)[1]

---

[1] Jones appears to argue that RTR is barred from relying on her emails as evidence, stating that she "never agreed to receive notification electronically nor to use email for any other official purpose." (Dkt. No. 88 ("Jones's Resp.") at 2.) The court is not aware of any applicable privilege that would bar RTR from using Jones's emails in this manner. Jones has not argued that the emails themselves are inauthentic, or that they have been mistakenly attributed to her. Jones's objection to this evidence is therefore overruled.

Jones received the draft settlement agreement from Lamer on June 17, 2010. She then asked Lamer for additional time to review the draft settlement agreement, noting that she may have "questions or concerns" and concluding "I'm positive we will come to a final agreement." (RTR's Mem., Ex. D ("6/17/10 8:23 PM Jones Email & 6/18/10 10:23 AM Jones Email").) Lamer granted Jones's request for additional time for review and reiterated the Material Terms of the agreement, prefacing these terms with the phrase, "As we agreed." (RTR's Mem., Ex. E ("6/18/10 11:16 AM Lamer Email").) Jones's only response to this email was to state, "Monday is great! Have a great weekend. Selena." (RTR's Mem., Ex. F ("6/18/10 11:49 AM Jones Email").)

On Monday, June 21, 2010, Jones emailed Lamer and stated, in relevant part:

After reviewing the information over the weekend and careful consideration, I regret to inform you that I have reconsidered the offer and terms of the pre-settlement agreement presented by you on behalf of your client Real Time Resolutions, Inc.

(RTR's Mem., Ex. H ("6/21/10 4:26 PM Jones Email").) Jones's June 21, 2010 email did not refer to any specific terms of the draft settlement agreement with which she disagreed, or any terms that she desired to add to, change, or delete. (*Id.*) In a follow-up phone call initiated by Lamer, Jones stated "that she did not agree with Paragraph 11 of the settlement agreement, which set forth a standard provision that the parties had reviewed the agreement and had an opportunity to negotiate the agreement." (Lamer Aff. ¶ 19.) According to Lamer, Jones did not contest any of the Material Terms of the settlement agreement during the June 21, 2010 phone call. (*Id.*)

## LEGAL STANDARD

This court has "inherent authority" to enforce a settlement agreement that resolves claims

4

pending before it.  *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 279 F.3d 445, 449 (7th Cir. 2004).  In determining whether a settlement agreement was reached between Jones and RTR, the court applies Illinois law.  *See Magallanes v. Ill. Bell. Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008) ("Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law.").

Under Illinois law, "[o]ral settlement agreements are enforceable . . . if 'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (quoting *Wilson v.Wilson*, 46 F.3d 660, 666 (7th Cir.1995)).  "Whether a 'meeting of the minds' occurred depends on the parties' objective conduct, not their subjective beliefs." *Id.*  "[W]hen the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities."  *Sims-Madison*, 279 F.3d at 449.

## ANALYSIS

Jones argues that any settlement agreement reached between her and RTR cannot be enforced because (1) "there has been no consideration to support a contract" and (2) "[t]here is no signed contract in writing, as required by Illinois Statute of Frauds 810 ILCS 5/2-201 when the amount in dispute exceeds $500."  (Dkt. No. 88 ("Jones's Resp.") at 2.)  In her supporting declaration, she also makes clear her position that "Clearly, the parties understood that the settlement agreement would not be in effect until it was signed."  (Jones Decl. ¶ 7.)[2]

---

[2] This conclusory statement is inappropriately included in Jones's declaration, which should contain only those facts as to which Jones has personal knowledge.  *See generally* 28 U.S.C. § 1746.  However, in light of Jones's *pro se* status, the court overlooks this procedural error and considers Jones's argument as though it were included in her responsive brief.

5

Jones's first two arguments are without merit. If the parties did reach an agreement as to the Material Terms, consideration would be present in the form of "mutual and concurrent promises" to release each other from potential liability, *Solimini v. Thomas*, 688 N.E.2d 356, 361 (Ill. App. Ct. 2d Dist. 1997), in addition to the $1,000 to be paid to Jones. Furthermore, while oral settlement agreements are subject to the statute of frauds, "[t]he fact that the settlement was oral would not make it unenforceable under Illinois law." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). Jones's citation to 810 ILCS 5/2-201 is irrelevant, as that provision only applies to contracts for the sale of goods. Another provision of Illinois law prohibits certain oral agreements that are "not to be performed within the space of one year," 740 ILCS 80/1, but this court has no reason to believe that this provision would be applicable to the facts of this case.

Where Jones's argument has more traction is with respect to the objective evidence of the parties' intent, which appears to be consistent with both parties' versions of the relevant events.

Jones contends that she "did not state that she would accept [the settlement]," but instead "stated I needed three days to review it." (Jones Decl. ¶ 5.) Accordingly, Jones's emails to Lamer reference the ongoing need for Jones's "review and or approval," the possibility that she may yet have "questions or concerns," her position that she "can not sign or agree less than 24 hours," and her state of mind that there had been no "final agreement." (*See* 6/15/10 Jones Email; 6/17/10 8:23 PM Jones Email & 6/18/10 10:23 AM Jones Email.) Additionally, Jones never explicitly "confirm[ed] . . . by email response that [she] ha[d] agreed to this settlement," as requested by Lamer. (6/15/10 Lamer Email.)

On the other hand, Jones did not explicitly contradict Lamer's repeated references to the fact that the parties had reached an agreement as to the Material Terms. (*See* 6/15/10 Lamer Email ("Per our discussion this morning, . . . you have agreed to settle the above referenced matter"); 6/18/10 11:16 AM Lamer Email ("As we agreed...").) Moreover, in her emails, Jones refers to the relevant document as "the settlement agreement," "the agreement," and "the draft of the agreement" (6/15/10 Jones Email; 6/17/10 8:23 PM Jones Email & 6/18/10 10:23 AM Jones Email), supporting RTR's position that the parties reached an agreement as to the Material Terms and had only to memorialize this agreement in writing.[3]

RTR argues that this case is like *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007), where "the dispute arose during drafting of the settlement agreement, but was not based on a material term." (RTR's Mem. 7.) However, the plaintiff in *Dillard* "[did] not contest that the parties' oral discussions resulted in agreement on certain material terms," *Dillard*, 483 F.3d at 507, which makes that case distinguishable from this one.

Jones has stated under penalty of perjury that she did not agree to any of the Material Terms during the relevant June 15, 2010 phone call, instead asking for three days to "review" the terms that had been discussed. Lamer (and his co-counsel Leslie A. Greathouse[4]) likewise testified under oath that the parties *did* agree to the Material Terms during the relevant June 15, 2010 phone call. The court cannot resolve this disputed question of fact without assessing the credibility of the witnesses involved.

---

[3] It is not until her June 21, 2010 email that Jones refers to this document as "the pre-settlement agreement." (6/21/10 4:26 PM Jones Email.)

[4] (*See* Dkt. No. 104 ("RTR's Final Reply"), Ex. A ("Greathouse Aff.").)

CONCLUSION

For the reasons set forth above, defendant Real Time Resolution, Inc.'s "Motion to Enforce Settlement" (Dkt. No. 62) is taken under advisement. The court will address scheduling of an evidentiary hearing at the March 15, 2011 status hearing. The parties are encouraged to further discuss settlement of Jones's remaining claim against RTR.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 10, 2011