IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SELENA JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 0008 |
| ) | |
| US BANK NATIONAL ASSOCIATION, as ) | |
| Trustee for Credit Suisse First Boston 2004-AA1; ) | |
| AHL ACQUISITION, LLC, as Successor in ) | |
| Interest by Way of Merger to Aames Funding ) | |
| Corporation d/b/a Aames Home Loan; WELLS ) | |
| FARGO HOME MORTGAGE, INC., d/b/a ) | |
| America's Servicing Company; REAL TIME ) | |
| RESOLUTIONS, INC.; WILLIAM J. PARKER; ) | |
| CODILIS & ASSOCIATES, P.C.; UNKNOWN ) | |
| SHELL COMPANY; UNKNOWN TRUSTEE ) | |
| FOR UNKNOWN TRUST; UNKNOWN ) | |
| BENEFICIARY OF UNKNOWN TRUST; ) | |
| UNKNOWN HOLDER OF THE NOTE; ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In this lawsuit, *pro se* plaintiff Selena Jones ("Jones") alleges that defendants US Bank

National Association, as Trustee for Credit Suisse First Boston 2004-AA1 ("US Bank") and

Wells Fargo Home Mortgage, Inc. d/b/a America's Service Company ("ASC") (together

"Defendants") are liable to Jones for damages she suffered due to the unlawful execution of two

"consumer mortgage refinance transaction[s]" entered into on August 6, 2004, and for damages

Jones suffered due to Defendants' unlawful efforts to foreclose on the residential property

mortgaged by Jones and collect on the underlying notes. (Dkt. No. 73 ("2d Am. Compl.") ¶¶ 32-

1

33.)

Specifically, Jones alleges that US Bank and ASC are liable for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO") ("First Cause of Action"), that US Bank is liable for violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA") ("Second Cause of Action"), that ASC is liable for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA") ("Third Cause of Action"), that US Bank and ASC are liable for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") ("Eighth Cause of Action"), and that ASC is liable for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") ("Ninth Cause of Action").[1]

On June 18, 2010, Defendants filed a "Motion to Dismiss for Failure to State a Claim" (Dkt. No. 48), asking the court "to dismiss with prejudice all claims set forth against it [sic] by Plaintiff Selena Jones in Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted." (*Id.*) The court separately addresses each of Jones's claims against US Bank and ASC in the analysis that follows.

---

[1] Jones's causes of action requesting that this court vacate the Circuit Court of Cook County's June 9, 2008 judgement of foreclosure ("Fourth Cause of Action"), set aside the January 6, 2010 sale of the subject Property ("Fifth Cause of Action"), and quiet title to the subject Property ("Sixth Cause of Action") were dismissed for lack of jurisdiction by this court on March 19, 2010. (Dkt. No. 20.) Jones's claims against other defendants are addressed by separate court orders.

BACKGROUND

At this stage in the litigation, the court under the law must accept the factual allegations set forth in Jones's Second Amended Complaint[2] as true for purposes of ruling on the pending motion and draw all reasonable inferences in Jones's favor. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). The facts set forth below are therefore stated from that perspective.

On August 6, 2004, Jones executed two "consumer mortgage refinance transaction[s]" with defendant AHL Acquisition, LLC, as successor in interest by way of merger to Aames Funding Corporation d/b/a Aames Home Loan ("Aames") in the amount of $155,200.00 ("First Loan") and $38,800.00 ("Second Loan") (together the "Loans").[3] (2d Am. Compl. ¶¶ 32-33.)

Prior to the August 6, 2004 closing, Aames had entered into "Assignment and Assumption Agreements" and "Pooling and Service Agreements" with one or more parties. (*Id.* ¶ 44.) After the closing, Jones's Loans were securitized as a "Real Estate Mortgage Investment Conduit" and entered into a loan pool, where the Loans were purchased by investors. (*Id.* ¶¶ 45, 62.) Although Aames is listed as the "lender" in the Loan documents, the actual source of

---

[2] On July 20, 2010, the court clarified that Defendants' motion to dismiss would apply to Jones's Second Amended Complaint. (Dkt. No. 71.)

[3] In her Second Amended Complaint, Jones alternatively refers to the Loans and their associated mortgage documents and notes in the plural form (*see, e.g.,* 2d Am. Compl. ¶ 41 ("the aforementioned Notes"); ¶ 45 ("The loans"); ¶ 66 ("either Mortgage"); ¶ 70 ("the Note(s)")) and in the singular form (*see, e.g., id.* ¶ 34 ("the mortgage loan"); ¶ 43 ("the loan"); ¶ 49 ("the note"); ¶ 54 ("a MORTGAGE"); ¶ 55 ("the Note"); ¶ 64 ("the loan")). These discrepancies appear to arise out of the fact that US Bank bought both Loans, but only based its foreclosure action on an alleged default on the First Loan. (*See id.* ¶¶ 46, 68.) The court has done its best to reconcile all references to the Loans in a manner consistent with this understanding of the allegations included in Jones's Second Amended Complaint. Unless otherwise indicated, any reference to the "Loans" includes the Loans' associated mortgage documents and notes.

funding for the Loans is these undisclosed investors. (*Id.* ¶¶ 53-54.) The Loans also include undisclosed fees for the services of a mortgage aggregator and an investment banker. (*Id.* ¶ 53.) Through the process of pooling and selling Jones's mortgage documents, the associated notes were "pledged as collateral for other secured transactions" and negotiated to an undisclosed party. (*Id.* ¶¶ 55-60.) No assignment of either mortgage has been recorded in the county property records. (*Id.* ¶ 66.)

Aames sold Jones's Loans to US Bank, despite the fact that Aames had "already been paid in full" for these same documents. (*Id.* ¶ 46.) On April 12, 2005, US Bank sued Jones for foreclosure in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Case No. 2005-CH-06541 (the "Foreclosure Case"), based on an alleged default on the First Loan. (*Id.* ¶ 68.) However, US Bank was not an assignee of the mortgage for the First Loan, nor was US Bank the owner or holder of the associated note. (*Id.* ¶¶ 69-70.) Additionally, Jones was never served with a notice of default, and no notice of default was filed in the county property records. (*Id.* ¶ 67.)

On June 9, 2008, US Bank obtained a judgment of foreclosure against Jones's home at 3622 Cherry Hill Drive, Flossmoor, IL 60422 (the "Property"), which had been mortgaged in support of both Loans. (*Id.* ¶¶ 26, 51, 74.) The Property was then sold as a result of the foreclosure judgement on January 6, 2010. (*Id.* ¶ 77.) Jones was never served with a notice of sale prior to the January 6, 2010 sale, and no notice of sale was recorded in the county property records. (*Id.* ¶ 76).

Defendant ASC acted as the mortgage servicer for the First Loan. (*Id.* ¶ 11.) ASC is not the holder in due course of the associated note, nor "the owner of any rights under the mortgage

provisions of the deed of trust." (*Id.* ¶ 49.) The payments that Jones made to ASC for loan servicing were not applied to repay the First Loan. (*Id.* ¶¶ 48-50.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). If the allegations of a complaint "fail[ ] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6). Allegations of fraud, including Jones's RICO claim alleging a "scheme to defraud" (2d Am. Compl. ¶ 82), are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

In ruling on the pending motion to dismiss, the court construes Jones's Second Amended Complaint in the light most favorable to Jones, accepts as true all well-pleaded factual allegations set forth therein, and draws all reasonable inferences in Jones's favor. *Fednav Int'l Ltd.*, 624 F.3d at 837.

## ANALYSIS

1. RICO Claim (First Cause of Action)

In her civil RICO claim, Jones alleges that Defendants, along with Aames, are liable under 18 U.S.C. § 1962 for "committ[ing] acts of extortionate credit transactions and mail fraud / wire fraud," scheming to "falsely represent[ ] material facts and ma[ke] material omissions . . . to

5

induce the plaintiff to rely on them," and agreeing "to engage in a course of conduct . . . in furtherance of the conspiracy to defraud the Plaintiff for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff." (2d Am. Compl. ¶¶ 81-82, 91.) In furtherance of this scheme, Defendants "purported to 'negotiate' [Jones's] notes by adding terms which allowed the proceeds of the notes to be allocated to the payment of the notes of other borrowers," thereby fraudulently promoting the "securitization process." (*Id.* ¶¶ 97-98.) Jones describes the negotiation of her notes as being "in actuality the theft of her identity to hide the vast number of 'toxic waste mortgages,['] notes and obligations that the enterprise defendants were selling up through their 'securitization' chain." (*Id.* ¶ 99.) Jones alleges that Defendants "are repeating this pattern throughout the country" in the interest of creating "unrealistic and false market expectations," from which Defendants are able to "reap[ ] profits in the hundreds of thousands of dollars." (*Id.* ¶¶ 95, 102, 104.)

A RICO claim "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Moreover, income derived from a pattern of racketeering activity cannot be used to acquire any interest in an enterprise, nor can a pattern of racketeering activity be directly used to acquire any interest in an enterprise. 18 U.S.C. § 1962(a), (b). Conspiring to engage in any of the above-described activities is also explicitly prohibited. 18 U.S.C. § 1962(d). Jones alleges that Defendants violated all four RICO subsections. (2d Am. Compl. ¶ 106.)

6

To adequately plead her RICO claim, Jones must do more than merely "restate[ ] the elements of [the relevant RICO subsection] in boilerplate fashion." *Rao v. BP Products N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009). Rather, the factual allegations in Jones's complaint must plausibly suggest both a "pattern of racketeering activity" (or, in the case of a RICO conspiracy claim, an agreement to engage in a pattern of racketeering activity) and an "enterprise." *Id.* at 398-99 (listing the elements of RICO claims brought under §1962(a) and § 1962(c)); *see also Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 960-61 (7th Cir. 1996) (listing the elements of a § 1962(b) RICO claim and a § 1962(d) RICO conspiracy claim).

"To plead adequately a pattern of racketeering activity, a plaintiff must allege with particularity two predicate acts." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999); *see also* 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity"). As stated above, where the alleged predicate acts involve mail and wire fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. *Slaney*, 244 F.3d at 597. "Accordingly, a RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id.*

Defendants argue that Jones has only vaguely alleged "acts of extortionate credit transactions and mail fraud/wire fraud," without specifically identifying these predicate acts or the individuals who committed them. (Dkt. No. 50 ("Defs.' Mem.") at 5 (quoting 2d Am. Compl. ¶¶ 81).) Jones does not specifically respond to this argument. Rather, in her response,

7

Jones switches the basis of her RICO claim away from the "pattern of racketeering activity" theory set forth in her Second Amended Complaint (*see* 2d Am. Compl. ¶ 106) to a theory of RICO liability based on the "collection of an unlawful debt." (Dkt. No. 81 ("Jones's Resp.")) at 3.)

RICO does provide a cause of action for individuals who have been harmed by the collection of an unlawful debt, as opposed to a pattern of racketeering activity. *See* 18 U.S.C. § 1962(a)-(d). Jones's theory of relief cannot be pursued in this case, however, due to the jurisdictional bar imposed by the *Rooker-Feldman* doctrine.

Jones's "unlawful debt" theory of relief is grounded in her claimed right to rescission of the Loans. (*See also* Section 2, TILA Claim (Second Cause of Action), *infra*.) It is Jones's theory that, "[a]fter the loan was rescinded, the only lawful rate of interest was 0%." (Jones's Resp. 3 (citing TILA, 15 U.S.C. § 1635(b).) The problem with this theory is that the state court already determined that Jones owed a lawful debt to US Bank when it granted a judgment of foreclosure in favor of US Bank. As discussed more completely in this court's ruling on defendant Codilis & Associates, P.C.'s motion to dismiss (Dkt. No. 112 ("2/25/11 Dismissal Order") at 4-6) and in Section 4, FDCPA Claim (Eighth Cause of Action), *infra*, this court cannot consider claims that are "inextricably intertwined" with state court judgments. Jones's argument that the Loans should have been rescinded—and that the collection of either the principal or any interest on the Loans was therefore unlawful—is inextricably intertwined with the state court's June 9, 2008 judgement of foreclosure in favor of US Bank. Accordingly, this court is barred from further consideration of Jones's RICO claim to the extent it is based on the "collection of an unlawful debt."

8

To the extent Jones still asserts a RICO claim based on a "pattern of racketeering activity," the court finds that Jones has failed to adequately set forth a "pattern" of fraud pursuant to the heightened pleading requirements of Rule 9(b). Jones alleges that Defendants engaged in "acts of extortionate credit transactions and mail fraud / wire fraud," that Defendants "falsely represented material facts and made material omissions," and that Defendants "add[ed] terms which allowed the proceeds of the notes to be allocated to the payment of the notes of other borrowers." (2d Am. Compl. ¶¶ 81-82, 97.) Without more information identifying these acts, material facts, material omissions, and fraudulent terms, and without more information regarding Defendants' specific roles with regard to these alleged predicate acts, Jones's RICO claim fails to satisfy the pleading requirements of Rule 9(b). Jones will be granted leave to file a Third Amended Complaint including a revised RICO claim, on or before April 8, 2011 if she desires to do so and can do so consistent with this memorandum opinion and order.

2.      TILA Claim (Second Cause of Action)

In Jones's Second Cause of Action, Jones seeks to rescind her Loans pursuant to 15 U.S.C. § 1635(b) and 12 C.F.R. 226.23(d)(2), alleging that she gave timely notice to Aames of her intent to cancel and, therefore, "[t]he transaction, if any, between Plaintiff and US Bank ought to be unwound." (2d Am. Compl. ¶ 118.) Specifically, Jones alleges that at the August 6, 2004 closing, Aames "failed to give Plaintiff disclosures required by [TILA], including but not limited to, any copies of Notice of Right to Cancel," and that Jones nevertheless "mailed a notice of cancellation to Aames at the address given in the closing papers" on August 10, 2004. (2d Am. Compl. ¶¶ 27, 63.)

Defendants argue that Jones's claim for TILA rescission is barred by the applicable statute of repose. Although Defendants originally identified the incorrect statutory provision in support of their argument, the court agrees that Jones's TILA claim must be dismissed as time-barred.

Section 1635(f) of TILA states,

> An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f) (exception inapplicable). The United States Supreme Court has held in unequivocal terms that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998). Jones's argument that "there can be no statute of repose for rescission" is therefore incorrect. (Jones's Resp. at 4.)

In this case, the transaction at issue took place on August 6, 2004, and Jones's right to TILA rescission expired on August 6, 2007. Because Jones's complaint was not filed until January 2010, her claim for TILA rescission is dismissed as time-barred.

3. <u>RESPA Claim (Third Cause of Action)</u>

In her Third Cause of Action, Jones alleges that ASC violated 12 U.S.C. § 2605(e) by failing to respond to Jones's "qualified written request[s]." (2d Am. Compl. ¶¶ 119-122.) Defendants argue that Jones "has failed to provide adequate notice of the claim against ASC, and has failed to state a cause of action on which any relief could be plausibly granted." (Defs.'

Mem. at 8-9.)[4]

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 675, 680 (7th Cir. 2011). Among other duties, RESPA requires loan servicers to "respond promptly to borrowers' written requests for information." *Id.* RESPA defines a qualified written request as,

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

In her Second Amended Complaint, Jones alleges that she sent ASC a request in writing seeking "information on the status of the alleged default and the reasons for the rejection of payments." (2d Am. Compl. ¶ 119.) This communication was followed by a second written request "directed at specific information involved in the creation of a default." (*Id.* ¶ 121.) Jones alleges that each of these communications was a "qualified written request" under RESPA,

---

[4] Jones also alleges that ASC "failed to give Plaintiff credit for some of the periodic payments which were made, incorrectly calculated interest on the accounts, . . . failed to accurately debit fees[, and] . . . accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." (2d Am. Compl. ¶¶ 123-125.) Neither ASC nor Jones has addressed this portion of Jones's RESPA claim in the briefing now before the court, and the sufficiency of these allegations is therefore not at issue. However, the court notes its skepticism that these allegations support a cause of action under RESPA. (*See* Dkt. No. 108 ("2/14/11 Dismissal Order") at 3.)

and that ASC never responded to these requests. (*Id.* ¶¶ 119-122.)

Under federal pleading standards, Jones's Second Amended Complaint must include "sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. at 1940 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949; *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). In assessing the sufficiency of a complaint, the court accepts all factual allegations as true, but need not accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949. When analyzing the sufficiency of a *pro se* complaint, courts have a duty to liberally construe the factual allegations set forth therein. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Construing the allegations of the Second Amended Complaint liberally in favor of Jones, and accepting her factual allegations as true, the court finds that Jones has sufficiently stated a claim for relief under RESPA. Jones has alleged she wrote to ASC on two separate occasions seeking specific information regarding the servicing of her Loan. In her first communication, Jones sought information about the status of her alleged default and ASC's reasons for rejecting Jones's payments. In her second communication, Jones sought "specific information" regarding "the creation of a default." (2d Am. Compl. ¶ 121.) ASC did not respond to either of these requests. While these allegations alone are not sufficient to prove that Jones's communications actually meet RESPA's requirements for a "qualified written request," when accepted as true they are sufficient to plausibly suggest that ASC is liable for violating RESPA's provisions. *See Vician v. Wells Fargo Home Morg.*, No. 2:05-CV-144, 2006 WL 694740, at *4 (N.D. Ind. Mar.

16, 2006) ("Plaintiffs allege that they made a written demand on Wells Fargo to which they have not received a response. Taken in the light most favorable to Plaintiffs, these allegations are sufficient to state a claim for a violation of section 2605 of RESPA.").

This court has considered Defendants' argument that other district courts have required more of RESPA claims during the pleading stage. (*See* Defs.' Mem. at 9); *see also Aguilar v. Cabrillo Mortg.*, No. 09-CV-1799-IEG (AJB), 2010 WL 1909547, at *2 (S.D. Cal. May 11, 2010) ("In the absence of an actual letter, this conclusory recitation of generic demands does not 'raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)); *Espinoza v. Bank of America, N.A.*, No. 10-CV-6 JLS (AJB), 2010 WL 2012475, at *4 (S.D. Cal. May 17, 2010) (without allegations "demonstrat[ing] that the document sent to Defendant was a QWR . . . the Court cannot find that Plaintiffs' recovery is plausible"). However, the Seventh Circuit has stressed that the Federal Rules of Civil Procedure are meant to "ensure that claims are determined on their merits rather than on pleading technicalities." *Bausch*, 630 F.3d at 559. The court finds in this case that Jones has satisfied the applicable federal pleading standards for her RESPA claim.

4.     FDCPA Claim (Eighth Cause of Action)

For reasons set forth more completely in this court's ruling on defendant Codilis & Associates, P.C.'s motion to dismiss (2/25/11 Dismissal Order 4-6), the court agrees with Defendants that certain of Jones's FDCPA allegations are barred by the *Rooker-Feldman* doctrine. Specifically, this court finds that it does not have subject-matter jurisdiction over Jones's claim that US Bank violated 15 U.S.C. § 1692e by falsely representing to the Circuit Court of Cook County that US Bank was an assignee of the mortgage securing the First Loan, or

over Jones's claim that Defendants violated 15 U.S.C. § 1692f by attempting to collect a debt which is not owed. Both claims are inextricably intertwined with the state court's June 9, 2008 judgment of foreclosure in favor of US Bank and are therefore not reviewable by this federal district court.

Jones's only remaining FDCPA claim against Defendants is for their alleged violations of 15 U.S.C. § 1692g(b). (2d Am. Compl. ¶¶ 163, 169-170.) Specifically, Jones alleges that Defendants "continu[ed] to proceed with debt collection activities, including instituting foreclosure proceedings, without providing the required verification and validation" of Jones's debt on the Loans[5] after Jones disputed this debt. (*Id.* ¶ 170.) Defendants argue that, "to the extent [Jones] seeks to recover under the FDCPA based on pre-foreclosure collection efforts and the initiation of the foreclosure suit, her claim is time-barred." (Defs.' Mem. 12.) Again, for reasons set forth more completely in the court's ruling on defendant Codilis & Associates, P.C.'s motion to dismiss (2/25/11 Dismissal Order at 7-10), the court agrees. Jones's FDCPA claim is subject to a one-year statute of limitations, measured from the date of any illegal debt collection activity by Defendants. *See* 15 U.S.C. § 1692k(d); *see also Poulin v. The Thomas Agency*, No. 09-cv-575-GZS, 2011 WL 140477, at *5 (D. Me. Jan. 13, 2011); *Bond v. U.S. Bank Nat'l Ass'n*, No. 09-14541, 2010 WL 1265852, at *3 (E.D. Mich. Mar. 29, 2010). Any pre-foreclosure collection efforts, and the initiation of the Foreclosure Case itself, necessarily took place in 2005 or earlier. Because Jones's lawsuit was not filed until 2010, her FDCPA claim is time-barred to

---

[5] In her FDCPA claim, Jones refers to the "debt" as though only one of her Loans is at issue. However, in light of the fact that Jones's claim is brought against both ASC (the mortgage servicer on the First Loan) and defendant Real Time Resolutions, Inc. (the mortgage servicer on the Second Loan), the court has construed the Second Amended Complaint as alleging FDCPA violations in relation to both Loans.

the extent it relies on these collection activities.

In response to Defendants' motion, Jones argues that "[t]he statue of limitations is tolled under the principles of fraudulent concealment and discovery of the harm" (Jones's Resp. 6), but this court is at a loss to understand how this argument applies to Jones's FDCPA allegations. As Defendants note, "any attempt to collect the amounts due to US Bank through foreclosure proceedings was open and of public record." (Dkt. No. 84 ("Defs.' Reply") at 8.) Jones has not alleged in her Second Amended Complaint that US Bank fraudulently concealed its attempts to foreclose on the Property, and any such allegations would be implausible. Jones also does not argue that she was unaware of the foreclosure proceedings and, in fact, Jones has alleged that defendant William J. Parker "was Plaintiff's attorney of record for that case." (2d Am. Compl. ¶ 71.) Without more, the court finds equitable tolling to be inapplicable.

It is less clear to the court whether Jones is alleging that any illegal debt collection activities took place within the limitations period, distinct from the foreclosure proceedings. As noted above, Jones has alleged that Defendants "continu[ed] to proceed with debt collection activities" (2d Am. Compl. ¶ 170) after she disputed the debt. This court has held that "continuing to prosecute the Foreclosure Case is not itself a discrete debt collection activity sufficient to toll or restart the statute of limitations." (2/25/11 Dismissal Order at 9.) However, the relationship between Defendants' additional debt collection activities and the Foreclosure Case is unclear, especially with regard to mortgage servicer ASC, and it is plausible that Defendants could have engaged in distinct debt collection activities after the 2008 judgment of foreclosure but before the 2010 sale of the Property. At this point in the proceedings, Jones "need not anticipate and overcome affirmative defenses, such as the statute of limitations."

15

*Cancer Found., Inc. v. Cerberus Capital*, 559 F.3d 671, 674 (7th Cir. 2009). Because Jones has not alleged "facts sufficient to establish the [ ] tardiness," *id.,* of her entire FDCPA claim, the court declines to dismiss the § 1692g(b) claim in its entirety on statute of limitations grounds.

On the other hand, the court agrees with Defendants that Jones's § 1692g(b) claim does not include "the sort of factual detail necessary to properly alert the Defendants to what is being alleged." (Defs.' Mem. 10.) Jones alleges generally that she timely disputed the debt owed on her Loans and "demanded verification and validation" of the debt, and that Defendants "fail[ed] to obtain verification and validation of the alleged debt and mail copies thereof" to Jones. (2d Am. Compl. ¶¶ 163, 169.) However, Jones does not specifically identify any subsequent "debt collection activities" engaged in by Defendants, other than the time-barred claim that Defendants instituted foreclosure proceedings. Without any time frame or context for Jones's § 1692g(b) claim, Defendants cannot be expected to simply guess what actions they may have taken that would violate the FDCPA's prohibition on attempts to collect on a disputed debt. One of the purposes of the federal pleading standards is to "giv[e] the defendants fair notice of the nature of the claim against them." *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010). Jones has not done so in this case. Accordingly, Jones's § 1692g(b) claim is dismissed without prejudice. Jones will be granted leave to file a Third Amended Complaint including a revised FDCPA claim, on or before April 8, 2011 if she desires to do so and can do so consistent with this memorandum opinion and order.

2. <u>FCRA (Ninth Cause of Action)</u>

In her Ninth Cause of Action, Jones alleges that ASC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by "ma[king] false statements to credit bureaus and

neglect[ing] to make true statements to credit bureaus, including but not limited to an excessive amount of debt for which Plaintiff was tricked and deceived into signing." (2d Am. Compl. ¶ 173.)

Section 1681s-2(b) details the steps that a "furnisher of information" must take after receiving notice from a consumer reporting agency that a consumer has disputed the completeness or accuracy of information provided by the furnisher of information to the consumer reporting agency. *See* 15 U.S.C. § 1681s-2(b); 15 U.S.C. § 1681i(a)(2). Defendants argue that Jones's FCRA claim must be dismissed, because Jones has not alleged "that she filed any dispute with the credit reporting agencies, nor does she allege that the credit reporting agencies provided notice to ASC regarding those disputes." (Defs.' Mem. 14.) Without more, the court agrees that Jones has failed to state a plausible right to relief under § 1681s-2(b).

Jones invites the court to consider her allegation that she sent a qualified written request to ASC "requesting information on the status of the alleged default and the reasons for the rejection of payments" (2d Am. Compl. ¶ 119), but Jones has not alleged that ASC is a consumer reporting agency as defined by the FCRA. *See* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency" in relevant part as a person that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties").

To the extent Jones argues that the FCRA is "unconstitutional under the Equal Protection Clause" in its treatment of certain credit reporting agencies (Jones's Resp. 6), the court finds this argument to be unsupported and unpersuasive.

Jones's FCRA claim is dismissed without prejudice. Jones will be granted leave to file a Third Amended Complaint including a revised FCRA claim, on or before April 8, 2011 if she desires to do so and can do so consistent with this memorandum opinion and order.

CONCLUSION

For the reasons set forth above, Defendants' "Motion to Dismiss for Failure to State a Claim" (Dkt. No. 48) is granted in part and denied in part. Jones's RICO claim (First Cause of Action) is dismissed without prejudice for lack of subject-matter jurisdiction to the extent this claim is based on the collection of an unlawful debt, and without prejudice for failure to state a claim under Rule 9(b) to the extent this claim is based on a pattern of racketeering activity. Jones's TILA claim (Second Cause of Action) is dismissed with prejudice as time-barred. Jones's RESPA claim (Third Cause of Action) remains pending. Jones's FDCPA claim (Eighth Cause of Action) is dismissed without prejudice for lack of subject-matter jurisdiction to the extent this claim alleges violations of 15 U.S.C. §§ 1692e and 1692f, and without prejudice for failure to state a claim for which relief can be granted to the extent this claim alleges violations of 15 U.S.C. § 1692g(b). Jones's FCRA claim (Ninth Cause of Action) is dismissed without prejudice for failure to state a claim for which relief can be granted.

Jones is granted leave to file a Third Amended Complaint including a revised RICO claim, revised FDCPA claim, and revised FCRA claim, as well as reiterating her pending RESPA claim, on or before April 8, 2011 if she desires to do so consistent with this memorandum opinion and order. Status hearing remains set for March 15, 2011 at 9:00 a.m. to discuss scheduling. Parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 11, 2011