IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELENA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 0008 |
| | ) | |
| US BANK NATIONAL ASSOCIATION, as | ) | |
| Trustee for Credit Suisse First Boston 2004-AA1; | ) | |
| AHL ACQUISITION, LLC, as Successor in | ) | |
| Interest by Way of Merger to Aames Funding | ) | |
| Corporation d/b/a Aames Home Loan; WELLS | ) | |
| FARGO HOME MORTGAGE, INC., d/b/a | ) | |
| America's Servicing Company; REAL TIME | ) | |
| RESOLUTIONS, INC.; WILLIAM J. PARKER; | ) | |
| CODILIS & ASSOCIATES, P.C.; UNKNOWN | ) | |
| SHELL COMPANY; UNKNOWN TRUSTEE | ) | |
| FOR UNKNOWN TRUST; UNKNOWN | ) | |
| BENEFICIARY OF UNKNOWN TRUST; | ) | |
| UNKNOWN HOLDER OF THE NOTE; | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Pro se Plaintiff Selena Jones ("Jones") filed this lawsuit on January 4, 2010 after her

Flossmoor home was foreclosed in 2008. This case has a long and somewhat tortured procedural

history. As this court has explained in its previous orders, the *Rooker-Feldman* doctrine bars

Jones from pursuing claims that directly seek review of the state court foreclosure judgment or

are "inextricably intertwined" with it. *Taylor v. Fed. Nat'l Mortgage Assn.*, 374 F.3d 529,

532–33 (7th Cir. 2004). In what is now her Third Amended Complaint ("3d Am. Compl."),

Jones attempts to bring five claims related to the refinancing of her property, while avoiding the

impact of this doctrine.

In Count One, Jones alleges that U.S. Bank National Association, as Trustee for Credit Suisse First Boston 2004-AA1 ("U.S. Bank"), Wells Fargo Home Mortgage, Inc. d/b/a America's Servicing Company ("ASC"), and AHL Acquisition, LLC, as Successor in Interest by Way of Merger to Aames Funding Corporation d/b/a Aames Home Loan ("AHL") violated the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"). In Count Two, Plaintiff alleges that ASC violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"). In Count Three, Jones alleges a breach of fiduciary duty against AHL as successor to Aames.[1] Plaintiff also alleges that U.S. Bank and ASC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") (Count Four) and that ASC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") (Count Five).

U.S. Bank and ASC have filed a motion to dismiss Jones' Third Amended Complaint for failure to state a claim. (Dkt. No. 133 (Defs' Mot.).) For the reasons stated below, the motion is granted in part and denied in part.

BACKGROUND

Jones originally filed suit on January 4, 2010. Because her initial complaint was too vague to put the Defendants on notice of the claims against them, this court dismissed it and gave Jones leave to replead her complaint. (Dkt. No. 5). She did so, and the court allowed the case to proceed, which resulted in Jones filing what was titled a Second Amended Complaint on July 26, 2010. (Dkt. No. 73.) Subsequently, Defendants U.S. Bank and ASC sought dismissal of the claims against them in the Second Amended Complaint. On March 11, 2011, the court

---

[1]AHL has not filed an appearance in this case, and is in default. (Dtk. No. 146.)

granted in part and denied in part Defendants' motion to dismiss, and allowed Jones to file the Third Amended Complaint that is the subject of this motion. (Dkt. No. 119).[2]

In its March 11, 2011 ruling, the court dismissed Jones' RICO claim with prejudice as it related to her allegation that Defendants attempted to collect an unlawful debt and without prejudice as to her RICO claim based on a pattern of racketeering activity. *Jones v. U.S. Bank Nat'l Ass'n*, No. 10 C 0008, 2011 WL 882758, at *4 (N.D. Ill. March 11, 2011). The court dismissed Jones' claim against U.S. Bank under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*, with prejudice. *Id.* at *4–5. The court allowed Jones' RESPA claim against ASC to go forward, rejecting Defendants' argument that the claim should be dismissed because Jones did not include with her pleadings her correspondence with ASC. *Id.* at *6. As to Jones' FDCPA claim against U.S. Bank and ASC, the court dismissed certain claims as barred by the *Rooker-Feldman* doctrine, but allowed Jones to replead her claim that Defendants violated 15 U.S.C. § 1692g(b) to clarify whether any collection activity occurred during the limitations period other than the foreclosure proceedings. *Id.* at *7–8. Finally, the court dismissed without prejudice Jones' FCRA claim against ASC for failure to allege a plausible right to relief, and allowed her to replead. *Id.* at *9.

The allegations of Plaintiff's Third Amended Complaint are described below. The court will accept these factual allegations as true and draw all reasonable inferences in Jones' favor. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010).

On August 6, 2004, Jones entered into two "consumer mortgage refinance transactions with AHL Acquisition, LLC, as successor in interest by way of merger to Aames Funding

---

[2] Jones' complaint initially involved other claims and defendants, but this order will address only those claims pending against U.S. Bank and ASC.

Corporation d/b/a Aames Home Loan ("Aames"). (3d Am. Compl. ¶¶ 34–35, 53.) The first loan was in the amount of $155,200 ("First Loan"), and the second loan was in the amount of $38,800 ("Second Loan"). (*Id.* ¶¶ 34–35.) Prior to, or contemporaneous with, the closing, Aames entered into an "Assignment and Assumption Agreements" and "Pooling and Service Agreements" with one or more parties. (*Id.* ¶ 46.) The loans were subsequently securitized into a trust as a "Real Estate Mortgage Investment Conduit" ("REMIC") and entered into a loan pool, where the loans were purchased by investors. (*Id.* ¶¶ 47, 55, 58.) No assignment of either mortgage has been recorded in the county property records. (*Id.* ¶ 71.)

Aames sold Jones' loans to U.S. Bank, despite the fact that Aames had "already been paid in full" for these same documents. (*Id.* ¶ 48.) On April 12, 2005, U.S. Bank brought a foreclosure suit against Jones in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 2005-CH-06541 ("the Foreclosure Case") based on an alleged default on the First Loan. (*Id.* ¶ 73.) However, U.S. Bank was not an assignee of the mortgage for the First Loan, nor was U.S. Bank the owner or holder of the associated note. (*Id.* ¶¶ 74-75.) Additionally, Jones was never served with a notice of default, and no notice of default was filed in the county property records. (*Id.* ¶ 72.)

On June 9, 2008, U.S. Bank obtained a judgment of foreclosure against Jones' home at 3622 Cherry Hill Drive, Flossmoor, IL 60422, ("the Property") which had been mortgaged in support of both loans. (*Id.* ¶ 76.) Jones entered into a forbearance agreement with U.S. Bank between July 21, 2008 and October 21, 2008. (*Id.*) The forbearance agreement was successfully completed, but ASC and U.S. Bank refused to negotiate a payment plan thereafter. (*Id.*) As a result of the foreclosure judgment, the property was sold on January 6, 2010. (*Id.*) Jones was

4

never served with a notice of sale prior to the January 6, 2010 sale, and no notice of sale was ever recorded in the county property records.  (*Id.* ¶ 77.)

Jones hired Forensic Professionals Group USA, Inc. ("FPG-USA") to perform an audit. (*Id.* ¶ 82.)[3]  She has attached to her complaint two reports, both dated May 6, 2011, from FPG-USA, and the court will consider these reports as part of her pleadings.  The first report is titled "Confirm Loan in Pool Report" ("CLIP Report") (Third Am. Compl., Ex. B), the second "Stage One – Trust Not Identified Loan Securitization Audit Report" ("Stage One Audit Report").  (Third Am. Compl., Ex C.)  The CLIP Report states that there is "no loan list posted for CFSB [sic] 2004-AA1 on SEC records."  (Third Am. Compl., Ex. B, at 1.)  The Stage One Audit Report provides a time line of Jones' loan transactions and subsequent foreclosure, based on court documents and SEC filings.  (Third Am. Compl., Ex. C.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 (a)(2).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  The complaint must "include sufficient facts 'to state a claim

---

[3] FPG–USA is a company that investigates foreclosure documentation and the legitimacy of claims being made by the party seeking foreclosure.  In an explanation included as part of its report, FPG–USA says that it offers "highly qualified expert forensic mortgage analysis, discovery, investigation and reporting."  Richard Kahn, principal of FPG–USA, apparently authored the reports.

5

for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901,

903 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

1949. In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light

most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible

inferences in [her] favor." *Cole*, 634 F.3d at 903 (internal citations omitted).

Additionally, although Defendants style their motion as brought under Fed. R. Civ. P.

12(b)(6), their argument that certain claims should be dismissed because this court lacks

jurisdiction under the *Rooker-Feldman* doctrine falls within the rubric of Fed. R. Civ. P.

12(b)(1). In reviewing such a motion, the court must accept as true all well-pleaded factual

allegations and draw all reasonable inferences in favor of the plaintiff, but may look beyond the

jurisdictional allegations and consider any evidence submitted on the issue to determine whether

the court has subject matter jurisdiction. *St. John's United Church of Christ v. City of Chi.,* 502

F.3d 616, 625 (7th Cir. 2007).

## ANALYSIS

1.     RICO Claim (Count I)

In what Jones has labeled the "First Cause of Action" of her Third Amended Complaint,

she alleges that U.S. Bank, ASC, and AHL violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1962(a)-(d), "by participating in one or more of the

following relationships between the pattern of racketeering activity and the enterprise: (a)

Investing the proceeds of the pattern of racketeering activity into the enterprise, and/or (b)

Acquiring or maintaining an interest in, or control over, the enterprise through the pattern of racketeering activity, and/or (c) Conducting or participating in the affairs of the enterprise though the pattern of racketeering activity, and/or (d) Conspiring to violate one of the other provisions of RICO." (3d. Am. Compl. ¶ 114.)

A RICO claim "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705(7th Cir. 2006). To state a claim under §1962(a) requires a showing that a defendant: "(1) received income from a pattern of racketeering activity; (2) used or invested that income in the operation of an enterprise; and (3) caused the injury complained of by the use or investment of racketeering income in an enterprise." *Allstate Ins. Co. v. St. Anthony's Spine & Joint Institute, P.C.*, 691 F. Supp. 2d 772, 793 (N.D. Ill. 2010) (citing *Rao v. BP Prods N. Am. Inc.*, 589 F.3d 389, 398 (7th Cir. 2009)). To state a claim under § 1962(b), a plaintiff must allege facts to show that the defendants acquired or maintained an interest in the enterprise through a pattern of racketeering activity. *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 672 (7th Cir. 1998), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010). Section 1962(c) requires a showing of "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity," *Salinas v. United States*, 522 U.S. 52, 62 (1997), while §1962(d) prohibits a conspiracy to violate any of the other subsections. *Rao*, 589 F.3d at 400–01.

Although Jones attempts to bring a claim under each of these provisions, her pleading combines all of her RICO allegations into one count, and most of her factual allegations are combined in a long paragraph that is the only significant addition to the RICO allegations in her Third Amended Complaint. (3d Am. Compl. ¶ 90(1).) Her allegations as to every subsection

7

other than §1962(c) are simply boilerplate and are insufficient to state a claim. *See Rao*, 589 F.3d at 399. So the court will turn its attention to whether she has adequately stated a claim under § 1962(c).

As noted above, in § 90(1), Jones elaborates on her allegations of mail and wire fraud in an effort to show a pattern of racketeering activity. She contends that:

> Before closing, agents of Aames falsely represented to Plaintiff that Aames would be lending money and misidentified the proper party to receive TILA rescission notice. After closing, Aames falsely represented by mail to the IRS that each of the Mortgages qualified as a 'qualified mortgage' under REMIC. U.S. Bank materially omitted to include the Loan List in SEC filings posted by mail for CFSB [sic] 2004-AA1. ASC and U.S. Bank falsely represented by mail to Plaintiff that they would abide by the forbearance agreement, at the time that agreement was made. Other false representations and omissions are revealed by the Prospectus (Exhibit A) and CLIP Report (Exhibit B, see particularly page 13 point 6) and Stage One Audit Report (Exhibit C, see particularly page 17 points 9-10). US Bank falsely represented by mail that the First and Second Mortgages were in the Loan Pool for CSFB 2004-AA1. ASC falsely claimed by mail to have loan servicing rights or authority for CSFB 2004-AA1 and for the First and Second Loans. By filing a foreclosure lawsuit, and by mail, U.S. Bank falsely represented that the First Note and the First Mortgage had not been separated, and that U.S. Bank was the owner and holder of the First Note. U.S. Bank induced Yolanda Williams to file a false affidavit filed March 31, 2008, falsely claiming to be "Vice President of Loan Documentation." U.S. Bank falsely represented to the public in recorded loan documents that Yolanda Williams was an Assistant Secretary of MERS. U.S. Bank materially omitted to disclose a conflict of interest of Yolanda Williams in claiming offices in MERS and U.S. Bank. See also paragraph 25 above. Defendants falsified the foreclosure claim as described in the Stage One Audit Report (Exhibit C). The foreclosure was not conducted with lawfully signed documents; nor was the chain of ownership made clear and revealed in full; nor were sufficient efforts made in good faith under State and Federal consumer protection requirements whereby Plaintiff could avoid foreclosure and make a satisfactory loan modification. Defendants omitted that as a part of the transaction, a national bank indirectly lent its credit, which is illegal. The loan is covered by a PSA that restricts or hampers loan modification, but the lender did not tell the borrower before processing a loan modification. The PSA forbids modification, yet the Lender offered a trial modification/forbearance and took my money knowing it is outright forbidden. The Note was pledged as collateral for other secured transactions, such notes are still being pledged, sold and traded long after their extinguishment, but these facts are

8

> concealed. MERS is part of the chain of title (of the note), but MERS endorsed the note to the servicer, NOT for value, and failed to disclose. MERS has gone to great lengths to conceal and hide the beneficial owners and holders in due course of various mortgage loans and pools of loans. Unknown Defendant(s) concealed from other parties the fact that the note is in default or in litigation (I am being used to defraud someone else).

(3d. Am. Compl. § 90(1).)

Defendants argue that this addition is insufficient to state a claim under 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." First, Defendants contend that Jones fails to allege an "enterprise" as required by RICO. Second, Defendants contend that Jones' claimed predicate acts are not actionable under RICO. Finally, Defendants contend that Jones did not allege actions by the Defendants that would constitute a pattern of racketeering activity as required by RICO. Because Defendants' latter two arguments are dispositive, the court need not address the sufficiency of Jones' enterprise allegations.

## A.      Predicate Acts

In order to establish a RICO claim based on a "pattern of racketeering activity," a plaintiff must properly plead at least two separate predicate acts within a 10-year time period. 18 U.S.C. § 1961(5). Where, as here, mail or wire fraud is the predicate act of a borrower's RICO claim, each element necessary to show mail or wire fraud must be alleged with the particularity and specificity required by Fed. R. Civ. P. 9(b). *Slaney v. Int'l Amateur Athletic Fed'n,* 244 F.3d 580, 599 (7th Cir. 2001). While the complaint need only provide a general outline of the

scheme, it "must, at minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'" *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992) (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991)).

Jones alleges that the "Defendants committed acts of extortionate credit transactions and mail fraud / wire fraud," and that "Defendants by mail, falsely represented material facts and made material omissions." (3d Am. Compl. ¶¶ 89-90.) Specifically, Jones alleges that "U.S. Bank materially omitted to include the Loan List in SEC filings posted by mail for CSFB 2004-AA1." (3d Am. Compl. ¶ 90(1).) Jones also alleges that false statements were made in the Prospectus for CSFB 2004-AA1, that U.S. Bank falsely represented by mail that the first and second mortgages were in the loan pool for CSFB 2004-AA1, and that ASC falsely claimed by mail to have servicing authority for the first and second loans. (*Id.*)

These allegations, however, cannot provide the basis for a civil RICO claim because the Private Securities Litigation Reform Act of 1995 (PSLRA) amended RICO to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). The PSLRA bar "was intended by Congress to eliminate securities fraud as a predicate offense in a civil RICO action and to bar a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *Payton v. Flynn*, No. 06 C 465, 2006 WL 3087075, at *6 (N.D. Ill. Oct. 26, 2006) (quoting *In re Enron Corp. Sec., Derivative, & ERISA Litig.*, 284 F. Supp. 2d

511, 618 (S.D. Tex. 2003)).  This statute bars RICO claims based on conduct that could be

actionable under the securities laws even when, as here, the plaintiff herself could not bring a

cause of action.  *In re Enron*, 284 F. Supp. 2d at 620.  While there is an exception to this bar, it

applies to defendants that have been criminally convicted of securities violations, and therefore

is not applicable here.  *See Krear v. Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997).

Consequently, as a matter of law, Jones' allegations based on SEC filings are not predicate acts

under RICO.

Additionally, Jones alleges that Defendants "falsely represented by mail that they would

abide by the forbearance agreement, at the time that agreement was made."  (3d Am. Compl. ¶

90.)  However, "a breach of contract claim . . . cannot be transmogrified into a RICO claim by

the facile device of charging that the breach was fraudulent, indeed criminal."  *Carr v. Tillery*,

591 F.3d 909, 918 (7th Cir. 2010).  "RICO is not a proper vehicle for levering a breach of

contract suit . . . under a statute that entitles a successful plaintiff to treble damages and

attorneys' fees."  *Id.*  Therefore, this allegation also fails to amount to a predicate act under

RICO.

Finally, many of Jones' allegations relate to the foreclosure proceeding, and thus run

headlong into the *Rooker-Feldman* bar.  Jones alleges that as part of the foreclosure suit, U.S.

Bank falsely represented that it was the owner and holder of the first note, induced Yolanda

Williams to file a false affidavit, and falsified the foreclosure chain.  These allegations, and the

information provided in the CLIP Report (3d Am. Compl., Ex. B) are troubling to the court.

However, as this court previously explained, these allegations are "inextricably intertwined"

with the state court judgment, in which the court determined that Jones owed a lawful debt to U.S. Bank. *See Jones*, 2011 WL 882758, at *4. Jones asserts in her response that she is seeking to re-open the state court judgment, which is the appropriate course of action to deal with these allegations. (Pl.s' Resp. 5, ¶ 8.)

The *Rooker-Feldman* doctrine prohibits federal jurisdiction over claims seeking review of state court judgments, even if they are wrong or even unconstitutional. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). The doctrine is based upon the recognition that inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). The *Rooker-Feldman* bar is narrowly applied to prevent a party from "effectively trying to appeal a state court decision to a federal court." *Davis v. Countrywide Home Loans, Inc.*, No. 1:10-cv-1303-JMS-DML, 2011 WL 837048, at *2 (S.D. Ind. March 4, 2011) (citing *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431 (7th Cir. 2009)).

To determine whether the *Rooker-Feldman* doctrine bars a claim, the court must ask whether the injury alleged by the federal plaintiff resulted from the state-court judgment or is distinct from it. *Garry*, 82 F.3d at 1365. Additionally, federal claims that were not raised in the state court or that do not on their face require review of the state court judgment may still be subject to *Rooker-Feldman* if they are "inextricably intertwined" with that state court judgment. *Taylor*, 374 F.3d at 533. That determination hinges on whether the federal claim alleges the injury was caused by the state court judgment, or whether the federal claim alleges an independent prior injury that the state court failed to remedy. *Id.* If the claim is inextricably

12

intertwined, and indirectly seeks to set aside a state court judgment, the court must determine whether the plaintiff could have raised the issue in the state court proceedings. *Id.* If she could have, the claim is barred. In order to show that she did not have a reasonable opportunity to raise the claim in state court, a federal litigant must "point[] to some factor independent of the actions of the opposing party that precluded the litigant[] from raising [her] federal claims during the state court proceedings," typically a state court procedure that barred the issue from being raised. *Id.*

Here, the injury alleged by Jones results from the entry of the judgment of foreclosure in favor of U.S. Bank. Additionally, addressing the merits of Jones' RICO claim would force this court to delve into the state court record and review the substance of the state court judgment, so it is clear that it is inextricably intertwined with the state court judgment. *See Davis*, 2011 WL 837048, at *4. Because Jones had the opportunity to raise these issues in her state court proceeding, *see Jones v. U.S Nat'l Bank*, No. 10 C 008, 2011 WL 814901, at *3 (N.D. Ill. Feb. 25, 2011), they cannot serve as a basis for the RICO claim, and she has failed to sufficiently allege predicate acts under the RICO statute.

### B.     Requirement of a Pattern

Additionally, the court finds that even if Jones had sufficiently alleged two predicate acts, her allegations fall short of establishing "a pattern of racketeering activity." To establish a pattern, in addition to the two predicate acts, a plaintiff must establish the "threat of continuing activity. . . . It is this factor of *continuity plus relationship* which combines to produce a pattern." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n. 14 (1985) (emphasis in original). "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar

purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). There are four factors to consider in determining whether conduct constitutes a pattern for purposes of RICO: (1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986). To the extent they are sufficiently pleaded under Rule 9(b), Jones' allegations largely focus on a single allegedly wrongful forbearance agreement and a single allegedly wrongful foreclosure. As such, they are insufficient to allege a pattern of racketeering activity. Because the court concludes that any further amendments to Jones' RICO claim in an effort to state a claim would be futile, Count I is dismissed with prejudice.

2.     RESPA (Count Two)

       In what Jones has tilted her "Second Cause of Action," she alleges that ASC violated RESPA by failing to respond to a qualified written request. (3d Am. Compl. ¶¶ 119–20.) "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). Under RESPA, loan servicers are required to respond to a borrower's "qualified written request" within 60 days. 12 U.S.C. § 2605(e)(2). In its previous ruling on Defendants' motion to dismiss Jones' Second Amended Complaint, the court rejected ASC's argument that Jones failed to state a claim under RESPA because she did not attach the written requests she sent to ASC. *See Jones*, 2011 WL 882758, at *6. The court held that Jones'

14

RESPA claim was sufficient under the liberal, notice-pleading standard provided for in the federal rules. *Id.*

Defendants again argue that Jones' RESPA claim should be dismissed for failing to include more details about the letters or to attach the qualified written requests to her complaint, but the court again disagrees. "Plaintiffs may survive a motion to dismiss without attaching [qualified written requests] to their complaint." *Arriaga v. Wells Fargo Bank, N.A.*, No. 09 C 2115, 2011 WL 4738522, at *7 (N.D. Ill. Sept. 30, 2011) (citing *Pelavo v. Home Capital Funding,* No. 08 CV 2030, 2009 WL 1459419, at *3 (S.D. Cal. May 22, 2009)).

However, Defendants raise an additional argument not included in their prior motion, namely that Jones cannot state a timely RESPA claim premised on a qualified written request sent to ASC during the time it was a servicer on her loan. (Defs.' Mem. in Supp. of Mot. 9–10.) Specifically, Defendants argue that RESPA defines a servicer as "the person responsible for servicing of a loan," where "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. §§ 2605(i)(2), 2605(i)(3). After Jones defaulted on her loan, which must have occurred prior to the April 12, 2005, foreclosure filing, ASC no longer received scheduled periodic payments from her, Defendants argue. At that point, they argue, ASC was no longer a "servicer" within the meaning of RESPA. *See Daw v. Peoples Bank & Trust Co.*, 5 F. App'x 504, 505 (7th Cir. 2001); *Bilek v. Bank of America, N.A.*, No. 07 C 4247, 2011 WL 830948, at *5 (N.D. Ill. March 3, 2011). Defendants argue that either Jones sent her qualified written requests prior to April 12, 2005, and her RESPA claim is time-barred, *see* 12 U.S.C. § 2614 (providing a three-year statute of limitations for claims under § 2605), or she sent her letter to ASC after the date of default, when it was no longer a servicer and no longer

15

subject to RESPA.

It is unclear why Defendants did not raise this argument — that Jones' RESPA claim was necessarily either time-barred or failed to state a claim — in their response to her Second Amended Complaint. The Second Amended Complaint alleges that U.S. Bank filed for foreclosure on April 12, 2005, *see Jones*, 2011 WL 882758, at *2, so this argument was available to ASC at that time. Fed. R. Civ. P. 12(g)(2) provides that a party who makes a Rule 12 motion is prohibited from making a subsequent motion under that rule raising a defense or objection that was available earlier. Neither side addresses the impact of this rule.

An amended complaint ordinarily supersedes a prior complaint, and a defendant may bring a second Rule 12 motion to challenge new matter within it. *Sears Petroleum & Trans. Corp. v. Ice Ban America, Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003). An amended complaint, however, does not automatically revive the defenses and objections a defendant waived in its first motion to dismiss, nor does it allow a defendant to advance arguments that could have been made in the first motion to dismiss. *Id.* As such, it was improper for Defendants to raise this argument in a successive motion to dismiss. Defendants have waived that argument, and the court will not consider it at this time. Jones' RESPA claim may stand.

3.    FDCPA (Count Four)

In what Jones has titled her "Fourth Cause of Action," Jones alleges that Defendants are debt collectors and that they violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(b) by: (1) failing to obtain "verification and validation of the alleged debts;" (2) failing to "mail copies [of the verification and validations] after they were timely disputed;" and (3) by proceeding with debt collection activities between the 2008 judgment of foreclosure and the

2010 foreclosure sale without first providing the required verification. (3d Am. Compl. ¶¶ 130, 131.) The only debt collection activity Jones specifically identifies, however, is the forbearance agreement, under which U.S. Bank sent her statements and collected her money from July 21, 2008 through Oct. 21, 2008. (3d Am. Compl. ¶ 131.)

In ruling on Defendants' Motion to Dismiss her Second Amended Complaint, this court found that Jones' § 1692g(b) claim was insufficiently pleaded, but allowed her to replead if she could state a claim within the limitations period. *Jones*, 2011 WL 882758, at *8. First, Defendants contend that this claim must be dismissed because U.S. Bank and ASC are not "debt collectors" within the meaning of the Act. (Defs.' Mem. in Supp. of Mot. 11.) Second, Defendants argue that even if the Defendants are debt collectors within the meaning of the Act, Jones' FDCPA claim is time-barred. (Defs.' Mem. in Supp. of Mot. 12–13.)

The FDCPA was enacted to, among other things, "eliminate abusive debt collection practices by debt collectors. . . ." 15 U.S.C. § 1692(e). The statute requires that within five days after their initial communication with a consumer regarding a debt, debt collectors must send written notice containing certain information, including a statement that unless the consumer disputes the debt within 30 days after receipt of the notice, it will be assumed valid. 15 U.S.C. § 1692g(a). If the consumer provides such notice, the debt collector must cease collection efforts until it obtains verification of the debt and mails a copy of that verification to the consumer. 15 U.S.C. § 1692g(b).

This court previously held that to the extent Jones complained of any pre-foreclosure debt collection, her complaint was barred by the FDCPA's one-year statute of limitations, which is measured from the date of the illegal debt collection activity. *Jones*, 2011 WL 882758, at * 7

17

(citing 15 U.S.C. § 1692k(d)).  In declining to dismiss this count in its entirety in its previous order, the court noted that it was possible that Defendants could have engaged in debt collection activities unconnected with the foreclosure after the 2008 judgment of foreclosure but before the 2010 sale of the property.  *Id.* at *8.  As such, it was possible that Jones' complaint, which was originally filed on January 4, 2010, timely complained of a debt collection activity.

In her Third Amended Complaint, Jones does allege that she made demands for validation of the debt between the 2008 judgment of foreclosure and the 2010 foreclosure sale, but the only debt collection activities she identifies during that time period relate to the forbearance agreement, which she acknowledges ended in October 2008.  (3d Am. Compl. ¶ 76.)[3]  Jones alleges that "immediately" after the completion of the forbearance agreement, ACS and U.S. Bank demanded a nearly $9,000 lump sum payment, and then pressed on with a judicial sale that was originally set for January of 2009.  (*Id.*)  Despite this court's admonition that she must provide a clear time frame for her claims, *see Jones*, 2011 WL 882758, at *8, Jones has failed to identify any debt collection attempts that occurred during the one-year-period prior to filing her complaint on Jan. 4, 2010.  Additionally, subsequent to this court's initial ruling, the Seventh Circuit held that § 1692g(b) limits a debt collector's duty of verification to requests made within 30 days after the debtor receives notice of a debt.  *Gulley v. Pierce & Assocs.*, 436 F. App'x 662, 664 (2011).  Although it is a non-precedential opinion, the court interprets *Gulley* to mean that Jones' cause of action accrued when she initially requested verification of the debt, but received no response.  This was, by her own admission, prior to the filing of the foreclosure

---

[3] In addition to being time-barred, Jones' FDCPA complaints in regard to the forbearance agreement fail because efforts to collect on a forbearance agreement do not amount to debt collection under the FDCPA.  *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387–88 (7th Cir. 1998).

action.  (Dkt. No. 73 (Sec. Am. Compl. ¶¶ 169–170).  Because it is clear that Jones' FDCPA

claim is time-barred, the court need not address Defendants' alternative argument that they are

not debt collectors under the FDCPA, and Count Four is dismissed with prejudice.

4.    FCRA (Count Five)

In what Jones refers to as her "Fifth Cause of Action," she alleges that ASC violated the

Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).  She contends that ASC is a furnished of

information under the statute, that she filed disputes with credit reporting agencies, and that the

credit agencies provided notice to ASC of these disputes.  (3d Am. Compl. ¶¶ 133–134.)  Jones

alleges that ASC "made false statements to credit bureaus and neglected to make true statements

to credit bureaus, including but not limited to an excessive amount of debt for which plaintiff

was tricked and deceived into signing, resulting in Plaintiff having negative information on [her]

credit reports."  (3d Amend. Compl. ¶ 137).

Under § 1681s-2(b):

> When a consumer reporting agency notifies a furnished of a dispute with regard to
> an account, the furnished of information must: (1) conduct an investigation with
> respect to the disputed information; (2) review all relevant information provided to
> it by the consumer reporting agency; (3) report the results of the investigation to the
> agency; and (4) if the information is found to be inaccurate or incomplete, report the
> results to all consumer reporting agencies to which it originally provided the
> erroneous information.

*Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).  ASC argues that Jones

fails to state a claim under this section of the statute because she alleges nothing about what ASC

did or did not do in response to notice of a dispute.  (Defs.' Mem. in Support of Mot. 14.)

ASC contends that from Jones' allegations, "it is unclear whether she is alleging that

ASC never conducted an investigation at all . . . conducted an investigation but never reported

the results to the credit reporting agencies . . . or [is alleging that ASC] committed some other wrongdoing." (*Id.*) Jones responds that she is alleging that ASC committed at least one of these wrongs, but she needs further discovery to determine which one. (Pl.'s Resp. 9, ¶ 17.)

Although this count is somewhat thinly pleaded, the court finds it sufficient at this stage of the case. *Twombly* does not require fact-pleading, and Jones' allegations that she disputed the debt and that ASC had notice of that debt but failed to take the proper actions are enough to put ASC on notice of the claims against it and raise a plausible right to relief. In their reply, Defendants argue that Jones' FCRA claim is likewise barred by *Rooker-Feldman*, but the court finds that this stretches the doctrine too far. It is conceivable that the court could find that ASC failed to take the appropriate action with regard to Jones' complaint without being called upon to review the validity of the state court judgment. For these reasons, Jones' FCRA claim may proceed.

## CONCLUSION

For the reasons stated herein, Count One, alleging a RICO violation against U.S. Bank, AHL, and ASC, is dismissed with prejudice, as is Count Four, alleging violations of the FDCPA by U.S. Bank and ASC. Count Two, alleging ASC violated RESPA, and Count Five, alleging it violated FCRA, may stand. Defendant ASC is directed to answer these counts by April 2, 2012. Jones and counsel for ASC are to confer and jointly file a Form 52 on or before April 16, 2012. The case is set for status and the entry of a scheduling order on April 24, 2012, at 9:00 a.m.

ENTER:

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date:   March 15, 2012