IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SELENA JONES A/K/A/ SELENA POOLE, A/K/A SELENA R. POOLE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 10 C 0008 ) |
| WELLS FARGO HOME MORTGAGE, INC | ) ) |
| Defendants. | ) ) |

## AMENDED MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

*Pro se* Plaintiff Selena Jones ("Ms. Jones") filed this lawsuit on January 4, 2010 after the 2008 judicial foreclosure of the mortgage on her Flossmoor, Illinois home. (Dkt. No. 1.) Under the *Rooker-Feldman* doctrine, Ms. Jones has been barred from seeking direct review of her state court foreclosure judgment or claims "inextricably intertwined" with that judgment. (Dkt. No. 151.) In Ms. Jones's Third Amended Complaint (Dkt. No. 131, "TAC" or "Third Amended Complaint"), she has attempted to allege five counts to avoid the impact of the *Rooker-Feldman* doctrine.

On March 15, 2012, this court dismissed three of the five counts against defendants that no longer remain in the case. (Dkt. No. 151, 3/15/12 Order, at 2.) Wells Fargo, N.A. d/b/a America's Servicing Company ("ASC") is the only named defendant remaining in the case. (Dkt. No. 201, at 1.) Only Counts II and V of Ms. Jones's Third Amended Complaint remain against ASC. (*Id.*)

In Count II, Ms. Jones's Third Amended Complaint alleges that ASC, as servicer for her loan, violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*,

1

by not responding to Ms. Jones's qualified written request for information. (TAC ¶¶ 117-23.) In Count V, Ms. Jones's Third Amended Complaint alleges that ASC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by not investigating and reporting inaccurate statements ASC made to credit bureaus concerning Ms. Jones's mortgage loan. (*Id*. ¶ 137.)

On January 31, 2014, ASC filed its "Motion for Summary Judgment on Counts II and V of the Third Amended Complaint", (Dkt. 199, "Motion for Summary Judgment"), along with a supporting memorandum, (Dkt. No. 201, "S.J. Mem."). In response to Count II, ASC argues RESPA did not obligate ASC to furnish Ms. Jones information, because ASC was no longer servicing her loan. (*Id*. at 6-7.) In response to Count V, ASC argues it complied with the FCRA, by investigating all of Ms. Jones's disputes and by verifying all information in Ms. Jones's credit reports concerning her mortgage loan. (*Id*. at 11-12.)

For the reasons stated below, ASC's Motion for Summary Judgment is granted in its entirety. Summary judgment in favor of ASC is granted on Count II, because under RESPA ASC no longer serviced Ms. Jones's loan, and consequently ASC no longer had a duty to furnish her information. Summary judgment in favor of ASC is granted on Count V, because ASC complied with the FCRA, by investigating all Ms. Jones's disputes and by verifying all information in Ms. Jones's credit reports concerning her mortgage loan.

## BACKGROUND

As discussed above, this lawsuit arises out of the foreclosure on Ms. Jones's home after her default on her mortgage loan. On August 6, 2004, Ms. Jones executed a note and a mortgage with Ames Funding Corporation d/b/a Ames Home Loan, for the amount of $155,200.00 (the "Mortgage Loan") to purchase a property located at 3622 Cherry Hill Drive, Flossmoor, Illinois (the "Property"). (Dkt. No. 202, ASC's L.R. 56.1 Statement of Undisputed Material Facts, "ASC's L.R. 56.1 Facts", ¶ 9.)[1]

In January 2005, Ms. Jones stopped making the required payments on the note and defaulted on her Mortgage Loan. (*Id.* ¶ 11.) On April 12, 2005, U.S. Bank, N.A., as trustee for Credit Suisse 2004-AA1 ("U.S. Bank"), filed a foreclosure action in Illinois state court (the "Foreclosure Action"). (*Id.* ¶ 12.) On June 9, 2008, the state court granted judgment in the Foreclosure Action in U.S. Bank's favor, holding that U.S. Bank had "standing, capacity and authority to maintain" the Foreclosure Action, and granting U.S. Bank a lien on the Property as well as "attorney's fees", "costs of foreclosure", and "advances made in order to protect" U.S. Bank's lien. (*Id.* ¶ 13.) U.S. Bank purchased the underlying property at public auction on January 6, 2010, and an Illinois state court confirmed the sale on February 25, 2010. (*Id.* ¶ 14.)

---

[1] Ms. Jones neither admitted nor denied this undisputed fact. (Dkt. No. 206, Ms. Jones Resp. ASC's Facts, ¶ 9). However, instead of rebutting this proposed undisputed material fact with actual evidence in the record, Ms. Jones set forth an unsupported narrative rife with conclusory statements and argumentative assertions. (*Id.*) Such responses are inappropriate at the summary judgment stage. *See, e.g.*, *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); *Nicholas v. Allstate Ins. Co.*, No. 10-629, 2012 WL 182216, at *5 (N.D. Ill. Jan. 23, 2012) (Feinerman, J.) (Local Rule 56.1 "requires [the plaintiff] to support [] denial[s] with evidence."). Because Ms. Jones has failed to comply with Local Rule 56.1, in this instance and others, this court deems admitted the following paragraphs from ASC's L.R. 56.1 Facts, ¶¶ 9, 9.a., 10-16, 17, 17.a., 17.b, 17.c, 18, 18.a, 18.b, 19, 23-25. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) (failure to comply with Local Rule 56.1 is "not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal.").

Over ten months after an Illinois state court granted judgment in the Foreclosure Action, ASC received an Automated Consumer Dispute Verification (an "ACDV") through the web-based E-OSCAR system on April 16, 2009. (*Id*. ¶¶ 17, 17.a.) ASC received this ACDV from credit reporting agencies notifying ASC that Ms. Jones disputed the accuracy of the Mortgage Loan information on her credit report. (*Id*.) ASC investigated this dispute and responded by updating the outstanding amount on Ms. Jones's Mortgage Loan and by confirming that the other information in Ms. Jones's credit report concerning the Mortgage Loan was accurate. (*Id*. ¶¶ 17.b, 17.c.)

On April 17, 2009, ASC received another ACDV noting that Ms. Jones disputed her present and previous account status and history, and requesting that ASC "verify" certain aspects of her Mortgage Loan. (*Id*. ¶ 18.) ASC investigated this second ACDV, and in response, ASC followed the same set of procedures it undertook for the first ACDV. (*Id*. ¶¶ 18.a., 18.b.)

On September 28, 2009, ASC received a third ACDV from credit reporting agencies, because Ms. Jones reported that a settlement or partial payments were accepted for her Mortgage Loan. (*Id*. ¶ 19.) ASC investigated this third ACDV, and again, ASC followed the same set of procedures it undertook for the prior two ACDVs. (*Id*. ¶¶ 19.a., 19.b.)

On December 15, 2009, ASC received a letter from Ms. Jones that was marked as a "QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, FOIA REQUEST, SIGNATURE REVOCATION, and AFFIDAVIT" ("Ms. Jones's Letter"). (*Id*. ¶ 21.) Ms. Jones's Letter included numerous requests for documents and information from ASC. (*Id*.) After receiving Ms. Jones's Letter, ASC gathered certain information relating to Ms. Jones's Mortgage Loan, mailed a response to Ms. Jones on

December 31, 2009, and acknowledged receipt of Ms. Jones's Letter while providing information on Ms. Jones's Mortgage Loan. (*Id.* ¶¶ 23-24.)

On January 4, 2010, Ms. Jones filed this lawsuit two days before U.S. Bank purchased the Property at public auction. (*Id.* ¶ 14.) The state court, as previously mentioned, confirmed this sale on February 25, 2010. (*Id.*) On February 1, 2011, Ms. Jones filed a petition with the state court challenging the foreclosure judgment, which was denied with prejudice on April 4, 2013. (*Id.* ¶ 15.) On May 9, 2013, Ms. Jones filed a notice of appeal from the April 4, 2013 order, which was dismissed for want of prosecution on September 30, 2013. (*Id.* ¶ 16.)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial responsibility of identifying materials in the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Case Co.*, 698 F.3d 598, 603 (7th Cir. 2012). In other words, it is the nonmoving party's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011). When ruling on a motion for summary judgment, the court "constru[es] all facts and draw[s] reasonable inferences in the light most favorable to" the nonmoving party. *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013).

## ANALYSIS

## I. Count II: Ms. Jones's RESPA Claim under 12 U.S.C. § 2605(e)

In Count II, Ms. Jones alleges that ASC violated section 2605(e) of RESPA by failing to respond to her alleged "qualified written requests." (TAC ¶¶ 117-23.) RESPA is a consumer protection statute regulating the real estate settlement process, including servicing loans. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011) (citing 12 U.S.C. § 2601 (Congressional findings)).

RESPA imposes various duties on lenders and loan servicers, including the duty to respond promptly to borrower written requests for information. *Id.* (citing 12 U.S.C. § 2605(e)). When a servicer receives a qualified written request from a borrower, the servicer must respond within 60 days after receipt of the request. *Id.* (citing § 2605(e)(2)(A)-(C)). The statute defines a qualified written request as written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error. *Id.* (citing 12 U.S.C. § 2605(e)(1)(B)). To qualify, the written request must also include the name and account of the borrower or must enable the servicer to identify them. *Id.*

In response to a qualified written request, the servicer must take one of three actions: (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable. *Id.*

ASC seeks summary judgment on Ms. Jones's RESPA claim (Count II), because ASC was not servicing her mortgage when it received Ms. Jones's Letter in December 2009. (S.J.

Mem. at 5-7.)[2]  RESPA defines "servicer" to mean "the person responsible for [the] servicing of a loan", and "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[.]"  12 U.S.C. § 2605(i)(2), (i)(3).  It is undisputed that upon receipt of Ms. Jones's Letter in December 2009, ASC had long stopped receiving scheduled periodic payments from Ms. Jones, who defaulted on her mortgage in January 2005.  (ASC's L.R. 56.1 Facts ¶¶ 11, 21.)  According to ASC, because it had ceased servicing Ms. Jones's Mortgage Loan within the meaning of RESPA, ASC was no longer bound by RESPA's requirement to furnish Ms. Jones information.  (S.J. Mem. at 5-7 (citing *Bilek v. Bank of Am., N.A.*, No. 07-4147, 2011 WL 830948, at *5 (N.D. Ill. Mar. 3, 2011) (St. Eve, J.).)

ASC first raised this argument in its second motion to dismiss, (Dkt. No. 134, at 8-10), and this court, at that time, declined to consider the argument in its corresponding order.  (Dkt. No. 151, 3/15/12 Order, at 15-16.)  The court held that ASC had waived its servicer argument under Fed. R. Civ. P. 12(g)(2)'s consolidation requirement.  (*Id.*)  Specifically, the court found that Rule 12(g)(2) prohibited ASC from advancing an argument, for the first time in a second motion to dismiss, that could have been made in ASC's first motion to dismiss.  (*Id.*)

Since that ruling, the Seventh Circuit has decided *Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012).  In *Ennenga*, the Seven Circuit held that Rule 12(b)(6) failure-to-state-a-claim defenses may be raised in successive motions to dismiss.  *Id*. at 773 ("Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion.")  This holding

---

[2] Ms. Jones alleges that ASC failed to respond to multiple qualified written requests, as opposed to just her December 2009 Letter.  (TAC ¶¶ 117-23.)  However, ASC contends that it never received any other correspondence purporting to be a qualified written request.  (ASC's L.R. 56.1 Facts ¶ 25.)  As discussed above, *supra* at 3 n.1, Ms. Jones has failed to rebut this fact with actual evidence in the record.  (Dkt. No. 206, Ms. Jones Resp. ASC's Facts, ¶ 25).  The court, consequently, deems it undisputed that Ms. Jones's December 2009 Letter is the only potential qualified written request Ms. Jones sent to ASC.

7

was based on the Seventh Circuit's interpretation of Rule 12(g)(2), which "specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Id.* In light of the Seventh Circuit's *Ennenga* decision, this court will consider ASC's argument that it no longer serviced Ms. Jones's Mortgage Loan.

ASC correctly notes that RESPA defines "servicer" to mean "the person responsible for servicing of a loan", and "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[.]" 12 U.S.C. § 2605(i)(2), (i)(3). It is also undisputed that, upon receipt of Ms. Jones's Letter in December 2009, ASC had long stopped receiving scheduled periodic payments from Ms. Jones, who had defaulted on her mortgage in January 2005. (ASC's L.R. 56.1 Facts ¶¶ 11, 21.) Accordingly, at the time ASC received Ms. Jones's Letter, ASC had ceased servicing Ms. Jones's Mortgage Loan, and ASC was no longer bound by RESPA requirements to furnish Ms. Jones information. *See Bilek v. Bank of Am., N.A.*, No. 07-4147, 2011 WL 830948, at *5 (N.D. Ill. Mar. 3, 2011) (St. Eve, J.) (granting summary judgment on RESPA claim, because the defendant no longer serviced a loan, as defined by RESPA, due to plaintiffs' default).

Since ASC had no duty to furnish Ms. Jones information under RESPA, this court finds that ASC could not have breached RESPA by failing to provide Ms. Jones information, and consequently, this court grants ASC summary judgment on Count II.

**II. Count V: Ms. Jones's FCRA Claim under 15 U.S.C. § 1681s-2(b)**

In Count V, Ms. Jones alleges that ASC violated section 1681s-2(b) of the FCRA, by not investigating and correcting allegedly inaccurate statements ASC reported to credit bureaus concerning Ms. Jones's Mortgage Loan. (*Id.* ¶ 137.)[3]

The FCRA "imposes certain duties on consumer reporting agencies as well as on entities that furnish information to credit reporting agencies." *Folkers v. Penn. Higher Educ. Assistance Found.*, No. 10-4981, 2011 WL 147914, at *3 (N.D. Ill. Jan. 18, 2011) (Aspen, J.) (citing § 1681s-2). This court has held that section 1681s-2(b) requires entities furnishing information to credit reporting agencies, within 30 days of receiving notice from a consumer reporting agency of a dispute, to: (1) conduct an investigation regarding the disputed information; (2) review all relevant information provided by the credit reporting agency; (3) report the results of the investigation to the credit reporting agency; and (4) report the results to other credit reporting agencies if the original information was incomplete or inaccurate. *Buxton v. Equifax Credit Info. Servs., Inc.*, No. 02-6288, 2003 WL 22844245, at *2 (N.D. Ill. Dec. 1, 2003).

In moving for summary judgment on Count V, ASC presents the single argument that it is entitled to summary judgment on Count V, because ASC satisfied its duties under section 1681s-2(b), and Ms. Jones has failed to carry her burden in turn to identify specific facts, in the record, demonstrating a genuine issue of fact for trial. (ASC Mem. at 11-12.) ASC received three ACDVs from credit reporting agencies, informing ASC that Ms. Jones disputed information on her credit history concerning the Mortgage Loan. (ASC's L.R. 56.1 Facts ¶¶ 17, 18, 19, 20.) After ASC received these ACDVs, ASC investigated each dispute, updated certain

---

[3] Ms. Jones also states that ASC is a "consumer reporting agency as defined by the FCRA." (TAC ¶ 136.) However, "banks and mortgage loan servicers are not 'consumer reporting agencies' within the meaning of the FCRA." *Crane v. Bank of N.Y. Mellon*, No. 12-103, 2012 WL 2620522, at *4 (E.D. Cal. July 5, 2012) (compiling cases).

information concerning Ms. Jones's Mortgage Loan, and verified all other information in Ms. Jones's credit report concerning her Mortgage Loan. (*Id*. ¶¶ 17.b, 17.c, 18.a, 18.b, 19.a, 19.b.)

This court agrees with ASC and grants summary judgment in ASC's favor on Count V. As discussed above, Ms. Jones failed to comport with L.R. 56.1 by rebutting ASC's material facts with actual evidence in the record, *supra* at 3 n.1, and consequently this court has deemed admitted the facts contained in ASC's L.R. 56.1 Facts ¶¶ 17.b, 17.c, 18.a, 18.b, 19.a, 19.b. In light of this holding, it is undisputed that after ASC received the three ACDVs, ASC investigated each of the disputes, updated certain information concerning Ms. Jones's Mortgage Loan, and verified all other information in Ms. Jones's credit report concerning her Mortgage Loan. (*Id*. ¶¶ 17.b, 17.c, 18.a, 18.b, 19.a, 19.b.) This court, consequently, finds that ASC satisfied its duties under section 1681s-2(b) of the FCRA.

The only cogent argument Ms. Jones states in rebuttal is that ASC "failed to provide any evidence" to support the material fact that ASC investigated and responded to the ACDVs as described above. (Dkt. No. 204, Jones Resp., at 3.) The court has considered and rejects this argument. In support of these facts, ASC cites to an affidavit from Alissa Doepp, Vice President of Loan Documentation at Well Fargo Bank, N.A. (ASC's L.R. 56.1 Facts, "Doepp Aff." or "Doeep Affidavit", at Ex. 3.) In Ms. Doeep's Affidavit, she confirms that after receiving the three ACDVs, ASC (1) reviewed Ms. Jones's Mortgage Loan information, (2) examined ASC's internal servicing records concerning Ms. Jones's Mortgage Loan account, and (3) responded to the credit reporting bureaus by updating the outstanding amount on Ms. Jones's Mortgage Loan and by confirming the accuracy of the other information concerning Ms. Jones's Mortgage Loan. (Doepp Aff. ¶¶ 4.i.ii, 4.i.iii., 4.j.ii, 4.j.iii, 4.k.ii, 4.k.iii.)

Because Ms. Jones is a *pro se* plaintiff, this court will construe her argument liberally. *See Titus v. Ill. Dept. of Trans.*, 828 F.2d 957, 966 (N.D. Ill. Dec. 14, 2011) (Castillo, J.) ("[a] document filed *pro se* is to be liberally construed"). The court will, consequently, assume Ms. Jones challenges the adequacy of Ms. Doepp's affidavit as self-serving and unsupported by evidence. *See, e.g., FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633-34 (7th Cir. 2005) (affirming decision to disregard affidavit at summary judgment stage, because affidavit did not cite record evidence to support its assertions). To put it another way, the court will assume Ms. Jones argues the Doepp Affidavit did not satisfy ASC's "initial responsibility of identifying materials in the record that demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1).

The court rejects this argument because the Doepp Affidavit does cite record evidence to support its factual claims. For every ACDV that ASC received, Ms. Doepp confirms that ASC properly responded to the credit reporting bureaus through the e-OSCAR system. (Doepp Aff. ¶¶ 4 i.iii., 4 j.iii., 4 k.iii.) In each instance, ASC selected Response Code "2", which represents that the credit reporting bureau should "[m]odify [Ms. Jones's] account information as indicated", after ASC had "updated the outstanding amount" on Ms. Jones's Mortgage Loan and "confirmed that the remaining information regarding Plaintiff's mortgage loan was accurate." (*Id.*) In support of these claims, Ms. Doepp cites to the responses ASC submitted through the e-OSCAR system, where the Response Code ASC selected is indicated. (*Id.*, Exs. C-E.)

This court, additionally, recognizes that the Seventh Circuit has on prior occasion held that the reasonableness of a defendant's investigation for a FCRA claim under section 1681s-2(b) is "a factual question normally reserved for trial". *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). In Ms. Jones's case, however, this court finds that "summary

11

judgment is proper", because "the reasonableness of defendant's procedures is beyond question." *Id*.

Again, it is undisputed that after ASC received the three ACDVs, ASC investigated each of the disputes, updated certain information concerning Ms. Jones's Mortgage Loan, and verified all other information in Ms. Jones's credit report concerning her Mortgage Loan. (ASC's L.R. 56.1 Facts ¶¶ 17.b, 17.c, 18.a, 18.b, 19.a, 19.b.) More was not required of ASC in response to Ms. Jones's credit disputes which, from the record before the court, have amounted to little more than an attempted backdoor challenge to the foreclosure on the Property in federal court. (*Id*. ¶¶ 13-19.) On multiple occasions, Ms. Jones was afforded the opportunity to challenge the foreclosure in Illinois state court, and she was unsuccessful. (*Id*.)

**III. Miscellaneous Remaining Issues**

   *A. Unnamed Defendants*

As previously mentioned, ASC is the only known named defendant with claims pending against it in the case. Plaintiff's Third Amended Complaint, however, names various purported unknown defendants: "UKNOWN SHELL COMPANY"; "UNKNOWN TRUSTEE FOR UNKNOWN TRUST"; "UNKNOWN BENEFICIARY OF UNKNOWN TRUST"; "UNKNOWN MASTER SERVICER"; and "UKNOWN HOLDER OF THE NOTE".

Because this case is at the summary judgment stage, this court dismisses these purported unknown defendants. Ms. Jones had the opportunity to identify these defendants before the close of discovery, and she failed to identify or serve with process any of them. As the Seventh Circuit has held, in such instances, district courts must dismiss purported unknown defendants from a case at the summary judgment stage. *Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007).

B. *Entry of Default*

On January 7, 2011, Ms. Jones moved for an entry of default against Defendant AHL Acquisition, LLC, as successor in interest by way of merger to Aames Funding Corporation d/b/a Aames Home Loan ("AHL"). (Dkt. No. 105.) On September 14, 2011, this court granted Ms. Jones's request for entry of default against AHL, because AHL was properly served and failed to appear in the case or attempt to defend against Ms. Jones's claims against it. (Dkt. No. 146.)

On January 20, 2012, Ms. Jones moved for a default judgment against AHL, failed to file a brief in support of her motion, and instead, informed the court that "it was incumbent upon the Court to inform Plaintiff of the deficiencies, their specifics and assist Plaintiff in correcting the submission." (Dkt. No. 147, at 3.) On January 31, 2012, the court denied Ms. Jones's motion for default against AHL without prejudice, because Ms. Jones failed to appear on the date this motion was set. (Dkt. No. 149.) Ms. Jones has not refiled her motion for default judgment against AHL.

In a recent unpublished opinion, the Seventh Circuit cautioned district courts against abusing their discretion by dismissing claims, which were never answered, without providing plaintiffs fair warning. *Bratchett v. Braxton Envtl. Servs. Corp.*, No. 13-3229, --Fed.Appx.-- , 2014 WL 1647010, at *4-5 (7th Cir. Apr. 25, 2014) (holding as previously stated in spite of plaintiff's failure to bring a motion for default judgment within three years from the date defendants' answer was due).

Due to the Seventh Circuit's statements in *Bratchett*, this court will permit Ms. Jones to properly file a motion for default judgment against AHL by 8/29/14. If Ms. Jones fails to file such a motion by this deadline, the court puts her on notice that it will vacate its entry of default against AHL for want of prosecution, (Dkt. No. 146), terminating this case in its entirety.

**CONCLUSION**

For the reasons stated above, ASC's Motion for Summary Judgment (Dkt. No. 199) is granted in its entirety. Summary judgment in favor of ASC is granted on Count II, because under RESPA ASC was no longer servicing Ms. Jones's mortgage loan, and consequently ASC was no longer required to furnish her information. Summary judgment in favor of ASC is granted on Count V, because ASC complied with the FCRA by investigating all Ms. Jones's disputes, updating certain information concerning Ms. Jones's Mortgage Loan, and verifying all other information in Ms. Jones's credit report concerning her Mortgage Loan.

The court dismisses all unknown defendants at this time, because Ms. Jones has had the opportunity to engage in discovery, has failed to identify any of these purported defendants, and has failed to serve any of them. Ms. Jones is ordered to file a proper motion for default judgment against AHL by 8/29/14. If Ms. Jones fails to file such a motion, this court will vacate its prior entry of default against AHL (Dkt. No. 146) for want of prosecution, terminating this case in its entirety.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

Date: August 12, 2014